IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERI PORTO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-17-1419 |
| CHEVRON NA EXPLORATION AND | § | |
| PRODUCTION COMPANY and | § | |
| CHEVRON USA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeri Porto, brings this action against defendant, Chevron NA Exploration and Production Company and Chevron USA (collectively, "Chevron") for employment discrimination based on disability in violation of Chapter 21 of the Texas Labor Code. Pending before the court are Defendant Chevron U.S.A., Inc.'s Motion for Summary Judgment ("Chevron's MSJ," Docket Entry No. 19), and Defendant Chevron U.S.A., Inc.'s Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike ("Chevron's Objections and Motion to Strike," Docket Entry No. 23). For the reasons set forth below, Chevron's Objections and Motion to Strike will be granted in part and denied in part, Chevron's MSJ will be granted, and this action will be dismissed with prejudice.

# I. Undisputed Facts[1]

On July 29, 2008, Chevron hired Porto as the Executive Administrative Assistant for Marcel Robichaux, the General Manager of Chevron's Drilling and Completions team.[2] For 2009, 2010, and 2011 Porto received a Performance Management Plan ("PMP") rating of 2, which falls within the "Meets Expectations" category, and meant that she was considered a "benchmark" employee.[3] For each of these years Porto received an annual salary increase ranging from 4.85% for 2009 to 2.36% for 2011.[4]

In late 2011 Porto took a two-month medical leave during which she was diagnosed with Relapsing-Remitting Multiple Sclerosis.[5]

In March of 2013 Porto received a PMP rating of 2- for 2012, which falls within the "Meets Expectations" category, but indicates that she was unable to handle some aspects of the job compared to

---

[1]See "Statement of Facts," Chevron's MSJ, Docket Entry No. 19, pp. 12-19; and "Statement of Material Facts," Plaintiff Jeri Porto's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 21 ("Plaintiff's Response"), pp. 6-17.

[2]Offer Letter, Exhibit 4 to Plaintiff's Response, Docket Entry No. 21-5; Declaration of Jennifer Wynn ("Wynn Declaration"), Exhibit C to Chevron's MSJ, Docket Entry No. 19-3, pp. 3-4 ¶ 5.

[3]Performance Management-PMP for 2011, 2010, and 2009, Exhibits 6-8 to Plaintiff's Response, Docket Entry Nos. 21-7 — 21-9; Wynn Declaration, Exhibit C to Chevron's MSJ, Docket Entry No. 19-3, p. 4 ¶ 6.

[4]Wynn Declaration, Exhibit C to Chevron's MSJ, Docket Entry No. 19-3, p. 4 ¶ 6.

[5]Oral Deposition of Jeri Porto ("Porto Deposition"), Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 10 (p. 14:19-23); Wynn Declaration, Exhibit C to Chevron's MSJ, Docket Entry No. 19-3, pp. 3-4 ¶ 5.

a "benchmark" employee.[6]    Nevertheless, Porto received a 2.5%
salary increase for 2013 and a performance bonus of $6,093.00.[7]
Robichaux stated in Porto's Performance Evaluation that she

> struggled to maintain a consistent level of performance
> throughout the year because she missed a considerable
> amount of time away from the office.  In order to improve
> this, we need to be more transparent in your day to day
> whereabouts to avoid last minute urgencies.  At times,
> she attempts to take on too much which leads to
> incomplete or inaccurate work . . . our ever-changing,
> very fluid work environment constantly adds much tension
> to her ability to keep up with my (our) activity.[8]

Robichaux also informed Porto that he had decided to transfer her
to the position of Office Assistant for the Completion &
Interventions Team where she would report directly to Shawn Pace.[9]

In March of 2013 Porto initiated the Chevron Steps to Employee
Problem Solution ("STEPS") program.  The STEPS program provides a
formal procedure for employees to present and receive a response to
a concern about the way company policies, practices, or rules are
applied to them, and/or raise concerns that employment decisions
against them may have been taken for unfair or discriminatory
reasons.[10]   Porto stated her reasons for initiating the STEPS
program as follows:

---

[6]Wynn Declaration, Exhibit C to Chevron's MSJ, Docket Entry
No. 19-3, p. 4 ¶ 7.

[7]Id.

[8]PMP 2012 for Jeri Porto, Exhibit 2 to Plaintiff's Response,
Docket Entry No. 21-3, p. 10.

[9]Id. at 11.  See also Wynn Declaration, Exhibit C to Chevron's
MSJ, Docket Entry No. 19-3, p. 4 ¶ 5.

[10]Id. at 5 ¶ 9.

I had my ePMP review with Marcel Robichaux on Friday, March 15, 2013. I had to come in on my 9/80 off day as requested. Mr. Robichaux asked me how I thought I did for the past year and I replied that I did well but that I would like to take on more administrative responsibilities, in particular GO forms. He then said, without discussion and going over my ePMP (he did not have a copy of it for the PMP evaluation), that he was moving me to another position since I have "Multiple Sclerosis"; and from what he read, "stress" is not good for Multiple Sclerosis. I told him that I was fine and could handle the stress, but he said that my current position was going to have more "pressure" and that he needs someone to be there on a constant basis. He stated that he was "doing me a favor". He again mentioned the fact that I have Multiple Sclerosis and said if something happened while I was working directly for him it would upset him. I then asked where he wanted to place me and he said in the Completions Group with Tim Korf. I reiterated that I loved my current job and did not want to move. Without further discussion I was dismissed. I was not given a copy of my ePMP but only a copy of my employee salary change report which we did not discuss either. I left the evaluation meeting not knowing what my performance rating reflected. On the way out Mr. Robichaux stated that my pay rate would remain the same but that I would receive a raise. When I reviewed my electronic PMP online several hours after our meeting the comments made by Marcel did not reflect the reason Mr. Robichaux stated for me being moved, that is because of my Multiple Sclerosis. It also reflected for the first time a rating of "2-(minus)", which means that I cannot "post-out" to a position in my Career Development Plan but only be placed to where Mr. Robichaux wants to place me. During the December 2012 PDC, After Rollup on January 8, 2012, and up until February 1, 2013, my rating was no less than a "2". Mr. Robichaux without prior discussion with me in reference to any issue(s) he may have had with me contacted Human Resources February 1, 2013, to change my rating to a "2-(minus)" knowing the consequences and restrictions that rating would present for me. Why would he do this knowing the amount of stress it would cause when his entire platform for moving me was his concern for my stress?[11]

_____

[11]STEPS 2-Record of Internal Faciliation, Exhibit 9 to Plaintiff's Response, Docket Entry No. 21-10, p. 2.

In April of 2013 Porto transferred to the position of Office Assistant for the Drilling and Completions team where she initially reported to Shawn Pace.[12] In her new position as Office Assistant Porto received the same pay, benefits, and other perks of the job, and had roughly the same job duties.[13]

In 2013 and 2014 Porto received a PMP rating of 2 and also received annual salary increases and performance bonuses.[14]

In January of 2016 Porto began reporting to Mary Green, and Green's supervisor, Joyce Beaugh.[15]

In February of 2016 Beaugh declined to approve expenses for Porto's company credit card ("P-Card"), and opened an investigation into expenses submitted by Porto for items that "did not appear to be business related,"[16] i.e., an AT&T cell phone and Turbo Tax Premier 2015 software.[17] During the investigation Porto argued that her previous supervisor, Shawn Pace, authorized the cell phone purchase, that she neither ordered nor received the Turbo Tax

---

[12]Wynn Declaration, Exhibit C to Chevron's MSJ, Docket Entry No. 19-3, p. 4 ¶ 5.

[13]Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 31 (pp. 102:18-103:7).

[14]Wynn Declaration, Exhibit C to Chevron's MSJ, Docket Entry No. 19-3, p. 4 ¶ 8.

[15]Id. See also Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 52 (pp. 180:15-181:5).

[16]Record of Discussion with Employee (re: Termination), Exhibit 5 to Plaintiff's Response, Docket Entry No. 21-6, p. 2.

[17]Id.

software, and that as soon as she became aware of the Turbo Tax charge, she had it removed from her P-Card account.[18]

> Additionally, as part of an attempt to address ongoing performance issues beyond the P-card activity, management and HR obtained a log of [Porto's] badge entries for the past 6 months from IT Forensics. This information revealed that the employee's badge was being used on days that Porto was reportedly out of the office on scheduled vacation or ill. A review of security camera footage by CBRES Facility Security showed that on days that [Porto] was confirmed out of office, someone other than Porto was using her SmartBadge to access the Clay Street parking garage. The individual was identified as . . . [Porto]'s husband.[19]

The investigation resulted in the following findings of fact:

- Insubordination — violation of Chevron's business Conduct and Ethics Code

- Failure to follow written instructions

- Failure to comply with Chevron's P-card policy

- Misconduct to include misrepresentation of facts resulting in obstruction of a Company internal HR investigation

- Failure to comply with Chevron's SmartBadge policy and Security directives.[20]

Based on these findings Chevron discharged Porto effective March 24, 2016.[21]

On March 7, 2016, while Chevron was conducting its investigation of her, Porto filed a Charge of Discrimination with

---

[18]Id. at 2-3.

[19]Id. at 3.

[20]Id.

[21]Id.

the Equal Employment Opportunity Commission ("EEOC") against

Chevron based on disability.[22]  In her EEOC Charge Porto stated:

> I have worked since 2008 at Chevron as a Senior Administrative Assistant.  In 2011, I was diagnosed with Relapsing-Remitting Multiple Sclerosis.  I took a short medical leave of absence, and returned to work in November of 2011.
>
> Since my return to work, I have been discriminated against, based upon my disability. As soon as I returned from my leave of absence, my boss, Marcel Robichaux (General Manager of my unit) threatened me with a transfer out of my position because of my condition, stating that he "needed someone he could rely on". However, I complained and the case was resolved through mediation — the manager was required to apologize and the transfer was rescinded.  I was required, however, to remain in my unit, where Robichaux influences all activity and continues with his hostility.
>
> Since the mediation, and in retaliation for my complaint, I was subjected to a negative job evaluation and received increased scrutiny by the supervisors in my department. I have received no raises since my return to work, although before my diagnosis I received yearly raises. The Company has refused my requests for reasonable accommodation and I continue to be retaliated against. There has been no attempt by the Company to grant any of my reasonable accommodation requests.
>
> I am treated unfavorably by my peers because of the discriminatory hostility conveyed by Robichaux to me that continues to this day.[23]

On May 11, 2016, Porto filed a second Charge of Discrimination with

the EEOC in which she restated the complaint made in her March 7,

2016, EEOC Charge and added the following language:

---

[22]Charge of Discrimination, Exhibit 11 to Plaintiff's Response, Docket Entry No. 21-12, p. 2.

[23]Id. at 2.

After my original charge was filed with the EEOC on March 9, 2016, I was immediately harassed and retaliated against by Chevron management. My Company-authorized I Phone was confiscated by the Company. I was falsely accused of misusing Company assets. The Company's actions severely exacerbated my medical condition.

I was terminated from my position with Company on 3/24/2016, in retaliation for my original charge of disability discrimination against the Company.[24]

## II.  Chevron's Motion for Summary Judgment

Plaintiff filed this action against Chevron for disability discrimination in violation of Chapter 21 of the Texas Labor Code for disability discrimination by subjecting her to a hostile work environment, failing to reasonably accommodate her disability (Relapsing-Remitting Multiple Sclerosis), and for terminating her employment in retaliation for her having filed a charge of discrimination with the EEOC. Chevron argues that it is entitled to summary judgment on plaintiff's claims because:

(1) Porto's claims of discrimination are based upon actions that occurred more than three years prior to her charge of discrimination and are untimely as a matter of law; (2) Porto's discrimination claims are based upon acts that do not constitute adverse employment actions; (3) Porto has no evidence to rebut the legitimate, non-discriminatory reasons for each decision; (4) all of Porto's requests for reasonable accommodation were granted; (5) Porto did not suffer any alleged harassment that was sufficiently severe or pervasive and she failed to take advantage of any corrective opportunities offered by Chevron; (6) to the extent Porto reported the alleged harassment, Chevron took prompt corrective action; (7) there is no causal connection between Porto's EEOC

---

[24]Charge of Discrimination, Exhibit 12 to Plaintiff's Response, Docket Entry No. 21-13, p. 3.

Charge and any adverse actions because many of the acts occurred prior to Porto's filing of the Charge and there is no evidence that the decision makers were aware of her protected activity; and (8) Porto has no evidence to establish that Chevron's legitimate, non-retaliatory reasons were pretextual.[25]

Plaintiff responds that Chevron's MSJ should be denied because she has established "a prima facie case for her disability discrimination, retaliation, failure to reasonably accommodate and hostile work environment claims";[26] because there are genuine issues of material fact as to whether Chevron's stated reasons for discharging her are true or are pretexts for discrimination;[27] and because her claims are not time barred.[28]

## A. Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for

---

[25]Chevron's MSJ, Docket Entry No. 19, pp. 11-12.

[26]Plaintiff's Response, Docket Entry No. 21, p. 18.

[27]Id. at 29-32.

[28]Id. at 32-33.

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-2554 (emphasis in original)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "Moreover, the nonmoving party's burden

is not affected by the type of case; summary judgment is appropriate in <u>any</u> case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" <u>Id.</u> (quoting <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993)).

**B.  Applicable Law**

Chapter 21 of the Texas Labor Code prohibits discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." Tex. Lab. Code Ann. § 21.105. Under § 21.051 of the Texas Labor Code an "employer commits an unlawful employment practice if because of . . . disability . . . the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051(a)(1). An "unlawful employment practice is established when the complainant demonstrates that . . . disability was a motivating factor for an employment practice, even if other factors also motivated the practice." Tex. Lab. Code § 21.125(a). The Texas legislature modeled Chapter 21 of the Texas Labor Code after federal employment discrimination law. Therefore, when reviewing a Texas Labor Code case courts may also look to cases interpreting the analogous federal provisions for guidance. <u>Pineda v. United Parcel Service, Inc.</u>, 360 F.3d 483, 487 (5th Cir. 2004)

(citing Quantum Chemical Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001) (age discrimination)). See also NME Hospitals, Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999) (recognizing that the predecessor to Chapter 21 of the Texas Labor Code "purports to correlate 'state law with federal law in the area of discrimination in employment'" and that "in light of the Legislature's express purpose, [the Texas Supreme Court] look[s] to analogous federal precedent for guidance when interpreting [Texas law of employment discrimination]"); Mission Consolidated Independent School District v. Garcia, 372 S.W.3d 629, 633 (Tex. 2012) ("Section 21.051 is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination. (Those forms of discrimination are addressed in separate statutes.)").

Porto may establish a claim for employment discrimination based on disability in violation of Chapter 21 of the Texas Labor Code by using direct evidence or by using the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Garcia, 372 S.W.3d 634 ("Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases."). Direct evidence of discrimination "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004). Porto has not cited direct evidence of

discrimination and has not argued that this is a direct evidence case. Because Porto has attempted to show discrimination through circumstantial evidence,[29] the burden-shifting framework governs her claims. <u>Garcia</u>, 372 S.W.3d at 634.

Porto's initial burden under the <u>McDonnell Douglas</u> framework is to establish a prima facie case of discrimination based on disability. 93 S. Ct. at 1824. "Although the precise elements of this showing will vary depending on the allegations, . . . the plaintiff's burden at this stage of the case 'is not onerous.'" <u>Quantum Chemical</u>, 47 S.W.3d at 477. A prima facie case raises an inference of unlawful discrimination. <u>Texas Department of Community Affairs v. Burdine</u>, 101 S. Ct. 1089, 1094 (1981). If plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant-employer "to articulate some legitimate, non-discriminatory reason for [its actions]." <u>Quantum Chemical</u>, 47 S.W.3d at 477 (quoting <u>McDonnell Douglas</u>, 93 S. Ct. at 1824). "The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing." <u>Id.</u> (citing <u>Burdine</u>, 101 S. Ct. at 1095).

If the defendant meets this burden, the plaintiff is given the opportunity to demonstrate that the defendant's articulated rationale is merely a pretext for discrimination. <u>Id.</u> (citing <u>McDonnell Douglas</u>, 93 S. Ct. at 1826). If plaintiff can raise a

---

[29]<u>Id.</u> at 18-19.

genuine issue of material fact as to whether she has established pretext, that will suffice to avoid summary judgment. <u>Id.</u> Plaintiff may also survive defendant's motion for summary judgment by presenting evidence that the defendant's reason for its adverse action, while true, is only one of the reasons for its conduct, and that another "motivating factor" was the plaintiff's disability. <u>Id.</u> To be a motivating factor discrimination "must actually play a role in the employer's decision making process and have a determinative influence on the outcome." <u>Pinkerton v. Spellings</u>, 529 F.3d 513, 519 (5th Cir. 2008). The question on summary judgment is whether there is a conflict in substantial evidence to create a jury question. <u>See</u> <u>Gowesky v. Singing River Hospital Systems</u>, 321 F.3d 503 (5th Cir. 2003).

## C. Application of the Law to the Undisputed Facts

### 1. <u>Chevron is Entitled to Summary Judgment on Porto's Disability Discrimination Claim</u>

Porto alleges that she "was discriminated against, on account of her disability, Multiple Sclerosis."[30] Chevron argues that it is entitled to summary judgment on Porto's disability discrimination claim because she is unable to cite evidence capable of establishing a prima facie case, because it has articulated legitimate, nondiscriminatory reasons for its actions, and because Porto is unable to cite evidence capable of raising a genuine issue

---

[30]Plaintiff's Original Petition, Exhibit D to Notice of Removal, Docket Entry No. 1-5, p. 5 ¶ 5.2.

of material fact for trial as to whether Chevron's reasons for its actions were either pretexts for or motivated by discrimination based on her disability. Chevron also argues that any claim based on actions that occurred in 2012 and 2013 are barred because Chevron took prompt remedial action to remedy Porto's complaints about them, and because Porto failed to timely exhaust her administrative remedies with respect to those actions.[31]

> (a) Porto Establishes a Prima Facie Case of Discriminatory Discharge

To establish a prima facie case of disability discrimination, Porto must show that (1) she has a disability; (2) she is qualified for the job; (3) she suffered an adverse employment decision because of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees.[32] <u>Davis v. City of Grapevine</u>, 188 S.W.3d 748, 757 (Tex. App. — Fort Worth 2006, pet. denied) (citing <u>Turco v. Hoechst Celanese Corp.</u>, 101 F.3d 1090, 1092 (5th Cir. 1996)). As evidence that she is able to establish a prima facie case of disability discrimination, Porto has presented evidence showing that she has Multiple Sclerosis[33] and

---

[31]<u>See</u> Charge of Discrimination, Exhibit 11 to Plaintiff's Response, Docket Entry No. 21-12.

[32]Plaintiff's Response, Docket Entry No. 21, p. 19.

[33]<u>Id.</u> at 19-20 (citing Jeri Porto Declaration ("Porto Declaration"), Exhibit 1 to Plaintiff's Response, Docket Entry No. 21-1, p. 3 ¶ 10).

that she was able to perform the essential functions of her job.[34]
Responding to Chevron's MSJ, Porto argues that

> [t]here are multiple adverse actions that occurred in
> this case: (1) a negative performance evaluation in 2012
> and the lowest performance rating of Porto's career at a
> "2-" (2) an involuntary transfer to the Office Assistant
> position from Senior Administrative Assistant that
> negatively affected her job duties and her opportunity
> for career advancement and future earning potential,
> (3) an unwarranted investigation into her P-Card use and
> SmartBadge Activity and (4) her subsequent termination.[35]

Asserting that she was replaced by or treated less favorably than
non-disabled employees, Porto argues that her job duties were
absorbed by Sherry Darrett, Jenese Mendez, Bobby Braddick, and
Courtney Reagan, who are outside of her protected class.[36]

Chevron does not dispute that Porto is disabled, that she was
qualified for her position, that her job duties were absorbed by
employees outside of her protected class, or that she suffered an
adverse employment decision when she was discharged in March of
2016.[37] Chevron does dispute Porto's contention that her receipt

---

[34]Id. at 20 (citing Performance Management Reports for 2010 and
2009, Exhibits 7 and 8, Docket Entry Nos. 21-8 and 21-9).

[35]Id. at 21.

[36]Id. at 22.

[37]In cases like this where the plaintiff was discharged for
alleged work-rule violations, plaintiffs are generally required to
"establish a prima facie case by showing 'either that [they] did
not violate the rule or that, if [they] did, [employees outside the
protected class] who engaged in similar acts were not punished
similarly.'" Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090
(5th Cir. 1995). See also Greene v. Potter, 240 F. App'x 657, 660
(5th Cir. 2007) (per curiam).

of a negative performance evaluation for 2012, her transfer from the position of Administrative Assistant to Office Assistant in 2013, and the 2016 investigation of her P-Card and SmartBadge use constitute adverse actions under the Texas Labor Code.

> ### (1) Claims Based on Porto's 2012 Performance Appraisal, 2013 Reassignment, and Denial of Salary Increase are Time-Barred

Chevron argues that it is entitled to summary judgment on Porto's discrimination claim arising from actions that occurred in 2012 and 2013 because the actions about which she complains are all discrete acts for which the statute of limitations began to run on the day she was informed of each decision, and are time-barred because they all occurred more than 180 days before Porto filed her first EEOC Charge on March 9, 2015.[38]  See Tillman v. Southern Wood Preserving of Hattiesburg, Inc., 377 F. App'x 346, 349 (5th Cir. 2010) (alleged failure to provide plaintiff with a pay raise is a discrete act); Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir. 2004) (demotion and reassignment are discrete acts); Standley v. Rogers, 202 F. Supp. 3d 655, 663 (W.D. Tex. 2016), aff'd, 680 F. App'x 326 (5th Cir. 2017) (negative performance evaluation was discrete act).  See also Texas Labor Code § 21.202(a) ("A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice

_____

[38]Charge of Discrimination, Exhibit 11 to Plaintiff's Response, Docket Entry No. 21-12.

occurred."). With respect to her claims arising out of her 2012 performance evaluation and 2013 reassignment, Chevron argues that the statute of limitations began to run on March 15, 2013, the day she had her annual review with Marcel Robichaux,[39] and Porto failed to file an administrative complaint based on these actions until March 9, 2016. Chevron argues that

> [w]ith respect to [Porto's] claim of discrimination pertaining to her failure to receive an annual salary increase, the statute of limitations for each pay decision would begin to run on the date that Porto was allegedly informed that she would be receiving a salary increase. Therefore, Porto cannot assert a claim of discrimination for those annual salary decisions that were made and communicated to her prior to September 9, 2015. Because annual salary decisions are communicated to employees in March of each year (Exhibit C at ¶ 4), all of her claims [of] discrimination for failure to award her a salary increase for prior years are untimely and must be dismissed as a matter of law.[40]

Citing <u>Pegram</u>, 361 F.3d at 279, and <u>Texas Southern University v. Rodriguez</u>, No. 14-cv-1079, 2011 WL 2150238 (Tex. App. — Houston [14th Dist.], June 2, 2011, no pet.), Porto argues in response that

> [u]nder the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.[41]

In <u>Pegram</u> the Fifth Circuit recognized that the continuing violations doctrine extends the limitations period on otherwise

_____

[39]<u>See</u> STEPS 2-Record of Internal Facilitation, Exhibit 9 to Plaintiff's Response, Docket Entry No. 21-10, p. 2.

[40]Chevron's MSJ, Docket Entry No. 19, pp. 21-22.

[41]Plaintiff's Response, Docket Entry No. 21, p. 32.

time-barred claims only when the unlawful employment practice manifests itself over time, instead of in a series of discrete acts. 361 F.3d at 279. See also Rodriguez, 2011 WL 2150238, *2 (same). Citing National Railroad Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2072 (2002), the Fifth Circuit explained that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Id. The Pegram court stated that in Morgan the Supreme Court had carved out an exception for hostile work environment claims based on allegations of repeated conduct "so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." Id. Because under Pegram and Morgan claims based on discrete acts such as those alleged by Porto are timely only if they occurred within the limitations period and have been the subject of an administrative claim filed within 180 days of their occurrence, Porto's claims of discrimination arising from her 2012 performance evaluation, 2013 transfer, and failure to receive pay raises are all time barred, but her claims arising from her 2016 job criticisms and termination are not time-barred.

### (2) Porto Concedes that Her Discrimination Claim Based on 2016 Job Criticisms Is Not Actionable

Chevron argues that it is entitled to summary judgment on any claim that Porto alleges arising from job criticisms that she received from her supervisors, Green and Beaugh, in 2016 because

job criticisms do not constitute actionable adverse employment actions under the Texas Labor Code.[42] Adverse employment decisions do not include disciplinary filings, supervisor's reprimands, poor performance reviews, hostility from fellow employees, or criticism of the employee's work. Harris County Hospital District v. Parker, 484 S.W.3d 182, 196 (Tex. App. — Houston [14th Dist.] 2015, no pet.) (citing Anderson v. Houston Community College System, 458 S.W.3d 633, 644 (Tex. App. — Houston [1st Dist.] 2015, no pet.)). Adverse employment actions are ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. Id. Porto responds that she is not complaining that the 2016 investigation of her P-Card and SmartBadge use are adverse actions.[43] Thus, Chevron is entitled to summary judgment on any discrimination claim that Porto has asserted or attempted to assert based on the theory that job criticisms received in 2016 constitute adverse actions.

> (b) Chevron Articulates Legitimate, Non-Discriminatory
> Reason for Discharging Porto

Chevron argues that it is entitled to summary judgment on plaintiff's claim for disability discrimination arising from Porto's discharge because Chevron discharged Porto for legitimate, non-discriminatory reasons, i.e., "because of her misuse of her

---

[42]Chevron's MSJ, Docket Entry No. 19, pp. 22-23.

[43]Plaintiff's Response, Docket Entry No. 21, p. 22.

P-Card and SmartBadge, her false statements, and failure to cooperate with the internal investigation."[44]  These are all legitimate, non-discriminatory reasons for discharging an employee. See Jarjoura v. Ericsson, Inc., 266 F. Supp. 2d 519, 530 (N.D. Tex.), aff'd, 82 F. App'x 998 (5th Cir. 2003) (employee's misuse of company credit card and company cell phones both legitimate reasons for discipline and termination).  See also Mayberry, 55 F.3d at 1091 & n.4 (violation of work rules is a legitimate non-discriminatory reason for an adverse employment action).  Chevron has met its burden to produce evidence of a legitimate, nondiscriminatory reason for Porto's discharge.  Accordingly, the ultimate issue is whether Chevron unlawfully discharged Porto for discriminatory reasons based on disability.

> (c)  Porto Fails to Raise a Fact Issue as to Pretext or Discriminatory Motive

Under the McDonnell Douglas burden-shifting framework, once Chevron has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, Porto must introduce evidence that would enable a reasonable jury to find

> either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and

_____

[44]Chevron's MSJ, Docket Entry No. 19, p. 25 (citing Porto Deposition, Exhibit A, Docket Entry No. 19-1, p. 70 (p. 253:4-8); Declaration of Joyce Beaugh ("Beaugh Declaration"), Exhibit G, Docket Entry No. 19-18, p. 6 ¶ 9; Record of Discussion with Employee, Exhibit K, Docket Entry No. 19-24, p. 2).

another motivating factor is the plaintiff's protected
characteristic (mixed-motives alternative).

Rachid, 376 F.3d at 312 (internal quotation and alteration marks

omitted). See also Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d

735, 739 (Tex. 2003) (holding that "a motivating factor" is the

plaintiff's standard of causation in a Texas Labor Code unlawful

employment practice claim); Quantum Chemical, 47 S.W.3d at 480

(same).[45]  In pretext cases it is not enough that the employer was

wrong about the underlying facts that motivated the adverse

employment action.  The only question is whether the employer had

a good-faith belief that the facts that motivated the adverse

action were true. Jackson v. Cal-Western Packaging Corp., 602 F.3d

374, 379 (5th Cir. 2010). A factual dispute over the employee's

innocence of the allegations against her is not enough to survive

summary judgment; the plaintiff must put forward evidence

sufficient to create a factual dispute as to whether or not the

company subjectively believed that the allegations were true. See

Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir.

2002); Mayberry, 55 F.3d at 1091. Crutcher v. Dallas Independent

School District, 410 S.W.3d 487, 497 (Tex. App. 2013).  The

plaintiff has the ultimate burden of showing a genuine material

factual dispute over whether the defendant discriminated against

her on the basis of her membership in the protected class. Reeves,

120 S. Ct. at 2106.

---

[45]Plaintiff's Response, Docket Entry No. 21, p. 29.

Chevron argues that Porto is unable to cite any evidence capable of rebutting its reasons for discharging her, i.e., Porto's "misuse of her P-Card and SmartBadge, her false statements, and failure to cooperate with the internal investigation,"[46] or showing that the real reason for Chevron's decision to discharge her was discriminatory animus for her disability.[47] Citing Porto's deposition testimony, Chevron argues that

> with respect to Beaugh's Hotline complaint against Porto and Human Resources' investigation into Beaugh's allegations, Porto admitted that, she has no evidence to dispute that Beaugh honestly believed that Porto charged personal items to her P-Card without first obtaining proper approval or that the investigation was conducted because of Porto's disability. (Exhibit A at 126:20-23, 127:16-24, 145:9-146:8, 234:16-235:3, 235:13-236:15, 245:2-7, 277:25-278:9, 279:3-18). Thus, the only "evidence" of a discriminatory motive is Porto's own subjective belief, which is insufficient to raise a genuine issue of fact.[48]

As evidence that Chevron's legitimate, nondiscriminatory reason for her discharge is pretextual, Porto cites her own declaration as evidence that

> [t]he 32G Iphone [she] was accused of purchasing without authorization was in fact authorized by supervisor Shawn Pace [as] evidenced by his initials on the invoice and Porto's testimony. Further, Porto did not intentionally order or receive the Turbo Tax software as accused, [as] evidenced by the store's crediting the charge back to the company card.[49]

---

[46]Chevron's MSJ, Docket Entry No. 19, p. 25.

[47]Id. at 23-26.

[48]Id. at 24-25.

[49]Plaintiff's Response, Docket Entry No. 21, p. 31.

-23-

Porto cites her own declaration as evidence that "[s]he communicated this to Chevron, was ignored, and it was used against her as a purported reason for her termination."[50] As evidence that the real reason for Chevron's decision to discharge her was discriminatory animus for her disability Porto cites her own declaration as evidence that "she was assigned work that she was never required to do before disclosing her disability to her supervisors Ms. Beaugh and Ms. Green[, . . . and that] Ms. Green required the tasks to be completed in tight, nearly impossible time frames."[51] Citing February 11, 2016, emails with Green and Beaugh, Porto also argues that

> [o]nly ten days after [she] had an episode related to her Multiple Sclerosis at work, informed Chevron of it, and asserted in writing that she felt unfairly targeted after disclosing her disability and related issues, Ms. Beaugh filed a complaint through Chevron's ethics hotline alleging misuse of company funds. As explained herein, the facts of the investigation and its results are in dispute.[52]

The evidence that Porto cites is not sufficient to raise a genuine issue of material fact for trial either that Chevron's stated reasons for her discharge were not true or that discrimination based on disability was the real reason for Porto's discharge.

_____

[50]Id. at 32 (citing Porto Declaration, Docket Entry No. 21-1, p. 4 ¶¶ 14-15).

[51]Id. at 30-31 (citing Porto Declaration, Docket Entry No. 21-1, p. 3 ¶ 8).

[52]Id. at 31.

Chevron asserts that it discharged Porto following an investigation into her P-Card and SmartBadge use because Porto's supervisor, Beaugh, reasonably believed that Porto violated company work rules by using her P-Card to purchase a 32G cell phone without authorization and Turbo Tax software for personal use, and by allowing her husband to use her SmartBadge to access Chevron property on days that she did not report to work. Porto argues that this explanation is pretextual as regards her P-Card use because her previous supervisor authorized the cell phone purchase, and she did not intend to purchase the Turbo Tax software and had the charge removed from her account as soon as she was questioned about it. None of this evidence creates a factual issue for trial.

Porto does not dispute or deny that she used her P-Card to purchase the 32G cell phone and the Turbo Tax software. Instead, she disputes that she was not authorized to purchase the cell phone and that she intended to purchase the Turbo Tax software. At most, Porto's cited evidence might show that Chevron's belief that she misused her P-Card was incorrect, but it does not show that Porto's misuse of her P-Card was not the real reason Beaugh initiated the investigation into her P-Card and SmartBadge use. Porto does not dispute that allowing her husband to use her SmartBadge to access Chevron property constituted a work rule violation. Moreover, Porto testified at her deposition that she had no evidence to suggest that Chevron did not honestly believe that she had misused

-25-

her P-Card and SmartBadge,[53] that Beaugh's failure to believe her explanation for the P-Card charges was because of her disability,[54] or that Chevron did not have a good-faith belief that she violated company work rules by misusing her P-Card and SmartBadge.[55] Porto's insistence that Chevron incorrectly failed to accept her explanations for the work rule violations, i.e., that Pace authorized her cell phone purchase, she did not purposefully purchase the Turbo Tax software, and her husband used her SmartBadge to access the garage — not the building — do not create fact issues as to pretext because "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." <u>Mayberry</u>, 55 F.3d at 1091.

Citing her own declaration Porto contends that even if the reasons for which Chevron said it discharged her are true, Chevron's decision to do so was nevertheless motivated by discriminatory animus for her disability because after she told Green and Beaugh that she had Multiple Sclerosis, they assigned her new tasks and required her to complete them expeditiously, and Green sent her an email that made her feel unfairly targeted for disclosing her disability and related issues.[56]

---

[53]Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, pp. 43 and 77 (pp. 146:1-8, 280:8-281:2).

[54]<u>Id.</u> at 76 (279:3-18).

[55]<u>Id.</u> at 38, 43, 65-68, and 76 (pp. 126:3-127:24, 145:9-146:8, 234:16-245:12, and 277:25-279:18).

[56]Plaintiff's Response, Docket Entry No. 21, p. 28 (citing Porto Declaration, Docket Entry No. 21-2, ¶¶ 7-9).

Citing <u>Hacienda Records, L.P. v. Ramos</u>, 718 F. App'x 223, 235 (5th Cir. 2018), Chevron argues that Porto's Declaration must be "disregarded and cannot serve as a basis for denying summary judgment,"[57] because it "flatly contradicts her prior sworn deposition testimony without any explanation."[58] Chevron states that "[u]nder the 'sham affidavit' doctrine, where, as here, a party that has been examined at length on deposition cannot create a genuine issue of fact to survive summary judgment simply by submitting a declaration that contradicts, without explanation, her previously sworn testimony."[59] In <u>Hacienda Records</u>, 718 F. App'x at 235, the court applied the sham affidavit rule articulated in <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 495 (5th Cir. 1996), to hold that the plaintiff could not raise a fact issue in the face of summary judgment simply by submitting an affidavit that contradicts prior sworn testimony. <u>See also</u> <u>Cleveland v. Policy Management Systems Corp.</u>, 119 S. Ct. 1597, 1603 (1999) (recognizing that [f]ederal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting . . . her own previous sworn

_____

[57]Defendant Chevron U.S.A., Inc.'s Reply in Support of Its Motion for Summary Judgment ("Chevron's Reply"), Docket Entry No. 24, p. 15.

[58]<u>Id.</u>

[59]<u>Id.</u> at 14. <u>See also</u> Chevron's Objections and Motion to Strike, Docket Entry No. 23, pp. 8-9 and 12-13 (seeking to strike portions of ¶¶ 7-9 of Porto's Declaration, Docket Entry No. 21-1).

testimony (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"); <u>Lujan v. Navistar, Inc.</u>, _____ S.W.3d _____, 2018 WL 1974473, *5 (Tex. April 27, 2018) ("the sham affidavit rule is a tool that may be used to distinguish genuine fact issues from non-genuine fact issues in service of the 'underlying purpose of [summary judgment to] eliminat[e] . . . patently unmeritorious claims or untenable defenses.'"). Porto has not responded to Chevron's argument that the portions of her Declaration describing Green's and Beaugh's allegedly discriminatory conduct should be stricken and not considered for purposes of summary judgment because they contradict without explanation Porto's deposition testimony that neither Green nor Beaugh took any actions that Porto believed constituted discrimination based on her disability.

As to Green, Porto testified during her deposition:

Q.  Did you personally witness any acts or omissions by Ms. Green that you believe were done in order to discriminate against you?

A.  No.

Q.  Do you have any — did you personally witness any acts or omissions by Ms. Green that you believe were taken with respect to you in order to retaliate against you?

A.  I don't — I don't know.

Q.  Did you ever complain[] to a Chevron human resources person or upper management about anything

> Ms. Green did or should have done with respect to your employment?
>
> A.  No.[60]

Porto also testified during her deposition that Beaugh's discriminatory treatment of her began immediately after Beaugh became her supervisor even though Porto did not inform Beaugh of her Multiple Sclerosis until about a month later.[61] Moreover, Porto testified that Beaugh's discriminatory treatment did not change after Porto informed her of her Multiple Sclerosis, and that Beaugh's treatment of her could be attributed to a prior dispute that originated years earlier. For example, Porto testified:

> Q.  How would you describe your working relationship with Ms. Beaugh?
>
> A.  Tense.
>
> Q.  Was that something that — well, why?
>
> A.  Joyce was a supervisor before, then she left, and Marcel [Robichaux] brought her back and she wasn't a people person at all.
>
> Q.  And that's something that existed at the time she started being your supervisor?
>
> A.  Oh, yeah.
>
> Q.  So characterizing it as tense it didn't change before and after the fire marshal discussion. She was the same tense person that she always was?

---

[60]Chevron's Reply, Docket Entry No. 24, p. 20 (quoting Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 53 (pp. 185:25-186:17).

[61]Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 37 (p. 123:10-12).

A.   Yes.

Q.   Did Ms. Beaugh ever criticize your performance?

A.   Yes.

Q.   Did she ever discipline you?

A.   Yes.

Q.   When did she criticize your performance?

A.   I was told that I had to take on new responsibilities and I wasn't doing it timely like she wanted and she got angry.

Q.   Did you disagree with her conclusions?

A.   I tried to explain to her you cannot give something to somebody that they have never done the work before and expect them to just get it.

Q.   Other than criticizing you about the speed with which you complete the task did she criticize your performance?

A.   Yes.

Q.   What about?

A.   My expenses, the way I filed things. Just any new task that was laid to me it was — it was — she criticized.

Q.   And that's something that she did at the beginning of your being employed there?

A.   I guess so.

Q.   That is, as your supervisor?

A.   I guess so.

Q.   Your recollection is that whatever criticism she was making of you started at about the time you started working for her?

A.   Okay.

Q.    Is that a fair statement?

A.    Yeah.[62]

Because Porto testified during her deposition (1) that Green did not engage in any acts or failure to act that constituted discrimination against her for any reason, (2) that Beaugh's treatment of her did not change after Porto informed Beaugh of her Multiple Sclerosis, and (3) that Porto could not point to any evidence capable of establishing that Beaugh did not honestly believe that Porto charged personal items to her P-Card without first obtaining proper approval or that Chevron investigated Beaugh's complaint about Porto's P-Card use because of Porto's disability, Porto's declaration testimony that Green and Beaugh harassed and discriminated against her on the basis of disability by assigning her new tasks and criticizing her for failing to complete them expeditiously contradicts without explanation her deposition testimony to the contrary. Because Porto's declaration testimony that Green and Beaugh harassed and discriminated against her on the basis of disability contradict without explanation Porto's deposition testimony, the court will sustain Chevron's objections and strike ¶¶ 7-9 of Porto's Declaration and not consider them.   Hacienda Records, 718 F. App'x at 235 (citing S.W.S. Erectors, 72 F.3d at 496).   Absent the evidence of discrimination contained in these paragraphs of Porto's

---

[62]Id. at 38 (pp. 124:8-126:2).

Declaration, there is no summary judgment from which a reasonable fact-finder could conclude that discriminatory animus for Porto's disability motivated Chevron's decision to discharge her. Accordingly, the court concludes that Chevron is entitled to summary judgment on Porto's claim for disability discrimination arising from her discharge.

### 2. Chevron is Entitled to Summary Judgment on Porto's Hostile Work Environment Claim

In her Original Petition Porto alleges that Chevron is liable to her

> for disability discrimination in that she was the victim of a hostile work environment. Plaintiff was subjected to unwelcomed harassment, the harassment was on account of her disability and filing of an EEOC charge, the harassment was severe and pervasive, and it adversely affected the terms and conditions of her employment.[63]

Porto also alleged that she was "treated unfavorably by her peers because of the discriminatory hostility conveyed by Robichaux to her that continued through at least the day of filing of her Charge of Discrimination. . .,"[64] and that

> [a]fter filing the original EEOC charge on March 9, 2016, Plaintiff was immediately harassed and retaliated against by Chevron management. Chevron confiscated Plaintiff's company issued phone, accused her of misusing Company assets, and terminated her position on March 24, 2016. Chevron's actions have severely exacerbated her medical condition.[65]

---

[63]Plaintiff's Original Petition, Exhibit D to Notice of Removal, Docket Entry No. 1-5, p. 5 ¶ 5.3.

[64]Id. at 4 ¶ 4.8.

[65]Id. at 5 ¶ 4.9.

Chevron argues that it is entitled to summary judgment on Porto's hostile work environment claim because Porto has not alleged harassment that occurred within 180 days of her EEOC Charge, because the harassing behavior that Porto alleges was neither based on her disability nor sufficiently severe or pervasive to support a hostile work environment claim, and because Porto failed to take advantage of Chevron's corrective opportunities with respect to Green's and Beaugh's allegedly harassing conduct.

### (a) Porto's Hostile Work Environment Claim is Time-Barred

Porto does not dispute that the only specific acts of allegedly harassing conduct alleged in her complaint and her EEOC Charge took place more than 180 days before she filed her EEOC Charge. Citing Pegram, 361 F.3d at 279, Porto argues that

> [u]nder the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.[66]

Asserting that "at least some of the actions that constitute her claims for . . . harassment/hostile work environment . . . fall with 180 days of her EEOC charge,"[67] Porto argues that "Chevron's assertion that [her] claims are time barred do not negate the

_____

[66]Plaintiff's Response, Docket Entry No. 21, p. 32.

[67]Id. at 33.

inclusion of such discriminatory acts in [her] establishment of her prima facie case[]."[68]

As evidence that she was subjected to harassment that constituted a hostile work environment based on her disability that occurred within 180 days of the filing of her EEOC Charge, Porto only cites her Declaration that after she told Green and Beaugh that she had Multiple Sclerosis, she

> noticed that her work was more closely supervised and she was given additional tasks that she had never done before. Ms. Green would require this work to be complete expeditiously and with the volume of vendor information, it was nearly impossible to get it done in the time frame Ms. Green required. Before this, engineers from the Intervention Group were handling these tasks.[69]

Chevron argues that the cited paragraphs of Porto's Declaration contradict without explanation Porto's deposition testimony that Green did not take any actions that Porto believed constituted harassment or discrimination based upon Porto's disability:

> Q.   Did you ever personally witness any acts or failure to act by Ms. Green that you believe constituted harassment against you for any reason?
>
> A.   Not that I remember.
>
> Q.   Did you personally witness any acts or omissions by Ms. Green that you believe were done in order to discriminate against you?
>
> A.   No.

---

[68]Id.

[69]Id. at 28 (citing Porto Declaration, Exhibit 1 to Plaintiff's Response, Docket Entry No. 21-1, p. 3 ¶¶ 7-8).

Q.    Do you have any — did you personally witness any acts or omissions by Ms. Green that you believe were taken with respect to you in order to retaliate against you?

A.    I don't — I don't know.

Q.    Did you ever complain[] to a Chevron human resources person or upper management about anything Ms. Green did or should have done with respect to your employment?

A.    No.[70]

Porto's deposition testimony about Beaugh similarly contradicts without explanation the inference she contends should be drawn from her declaration — that Beaugh, too, subjected her to increased scrutiny because of her disability.

For the reasons stated in § II.C.1(c), above, the court has already concluded that the paragraphs of Porto's Declaration detailing the allegedly harassing and discriminatory treatment that she received from Green and Beaugh, i.e., ¶¶ 7-9, should be stricken as contradicting without explanation Porto's prior deposition testimony. See Hacienda Records, 718 F. App'x at 235 (citing S.W.S. Erectors, 72 F.3d at 496). Because absent the evidence of discrimination contained in these paragraphs of Porto's Declaration, there is no summary judgment evidence of alleged harassment that took place within 180 days of March 9, 2016, the date that Porto filed her EEOC Charge, Chevron is entitled to

---

[70]Chevron's Reply, Docket Entry No. 24, pp. 19-20 (quoting Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 53 (pp. 185:25-186:17)).

summary judgment on Porto's claim for hostile work environment based on disability as time-barred because the acts of harassment about which Porto complains all occurred more than 180 days before Porto filed her EEOC Charge.

> (b)  Porto Has Failed to Establish a Prima Facie Case of Hostile Work Conduct

To establish a prima facie case of hostile work environment, Porto must adduce evidence capable of establishing:    (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment complained of was based on her disability; (4) the harassment complained of affected a term, condition, or privilege of her employment; and (5) Chevron knew or should have known of the harassment and failed to take prompt remedial action.  E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007).  Where the alleged harassment is committed by the plaintiff's supervisor, the plaintiff need only satisfy the first four elements.  Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354 (5th Cir. 2001), abrogated on other grounds by Vance v. Ball State University, 133 S. Ct. 2434, 2443 (2013).  "A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment.'"  Reed v. Neopost USA, Inc., 701 F.3d 434, 443 (5th Cir. 2012).  Whether an environment is objectively hostile or abusive is determined by considering the totality of the

-36-

circumstances. <u>Harris v. Forklift Systems, Inc.</u>, 114 S. Ct. 367, 371 (1993). "Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained-of conduct undermines the plaintiff's workplace competence." <u>Hockman v. Westward Communications, LLC</u>, 407 F.3d 317, 325-26 (5th Cir. 2004) (internal citations omitted). Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to create a hostile work environment. <u>See</u> <u>Harris</u>, 114 S. Ct. at 370. Conduct must be extreme to change the terms and conditions of employment. <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275, 2284 (1998).

The conduct of Green and Beaugh that Porto argues constituted a hostile work environment, i.e., that they closely supervised her, assigned her new and additional tasks, and required her to complete those tasks expeditiously, is not the type that courts have found to constitute harassment, and certainly not harassment that is sufficiently severe or pervasive to create a hostile work environment. <u>See</u> <u>Credeur v. Louisiana Through Office of Attorney General</u>, 860 F.3d 785, 796 (5th Cir. 2017) (citing <u>Kumar v. Shinseki</u>, 495 F. App'x 541, 543 (5th Cir. 2012) (criticism in the workplace and threats to employee's job did not constitute

-37-

actionable harassment)). Where, as here, the employer's actions were all rationally related to work performance, and were not physically threatening, humiliating, or even offensive, they do not satisfy the standard for a hostile work environment claim. <u>Id.</u> <u>See also</u> <u>Cole v. Pearland Independent School District</u>, No. 4:11-CV-00211, 2013 WL 4494423, at *8 (S.D. Tex. March 21, 2013) (allegations that plaintiff was repeatedly harassed and abused, falsely reprimanded and given bad and unfair evaluations, and had her work scrutinized carefully were not sufficient to establish that the harassment affected a term, condition, or privilege of her employment); <u>Harris County Hospital District v. Parker</u>, 484 S.W.3d 182, 198 (Tex. App. — Houston [14th Dist.] 2015, no pet.) (allegations that plaintiff was "badgered about attendance and tardiness, . . . written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized to the point where it made him ill and ended his career with [the District]" failed to establish that the alleged harassment was sufficiently severe or pervasive that it affected the term, condition, or privilege of his employment); <u>Twigland Fashions, Ltd. v. Miller</u>, 335 S.W.3d 206, 225 (Tex. App. — Austin 2010, no pet.) ("Considering the infrequency of [supervisor's] alleged conduct, its lack of relative severity, and the limited degree to which it impacted [employee]'s work performance, [employee] has failed to raise a fact issue that she

suffered such a deprivation as understood in the applicable jurisprudence.").[71]

Porto has failed to present any evidence from which a reasonable fact-finder could conclude that the actions of Green and Beaugh about which she complains were sufficiently severe or pervasive to affect a term, condition, or privilege of her employment. Instead, Porto merely argues conclusorily that

> [t]he harassment did [a]ffect Porto's employment with Chevron. The heightened scrutiny of her job duties and the negative attitude towards her disability caused her to lose her position as a Senior Administrative Assistant and caused unwarranted difficulty in her role as an Office Assistant, ultimately leading to her termination.[72]

Porto may have perceived Green's and Beaugh's actions as discriminatory, but an employee's "'subjective physical and emotional reactions'" to her employer's conduct, "'do not establish that the work environment would have been perceived as hostile or abusive by a reasonable employee.'" Credeur, 860 F.3d at 797. The

---

[71]Porto asserts some of the acts of Green's and Beaugh's alleged harassment were retaliatory in nature instead of motivated by her disability. "Although the federal courts have recognized claims for retaliatory hostile work environment, Texas has not." In re Parkland Health and Hospital System Litigation, 2018 WL 2473852, *8 (Tex. App. — Dallas, June 4, 2018, no pet.) (citing Manor Independent School District v. Boson, No. 03-16-00756-CV, 2017 WL 1228880, *2 n.4 (Tex. App. — Austin, March 29, 2017, no pet.); Metropolitan Transit Authority of Harris County v. Ridley, 540 S.W.3d 91, 99 (Tex. App. — Houston [1st Dist.] 2017, pet. denied) ("analyzing retaliatory hostile work environment allegations under retaliation framework rather than separate elements of hostile work environment)."

[72]Plaintiff's Response, Docket Entry No. 21, p. 29.

difficulties that Porto experienced in the workplace do not convert her supervisors' actions into harassment sufficient to create a hostile work environment.

Porto has nothing but her own subjective belief that Green's and Beaugh's alleged scrutiny and criticism of her performance was because of her disability. See Gibson v. Verizon Services Organization, Inc., 498 F. App'x 391, 394 (5th Cir. 2012) (finding no hostile work environment claim where plaintiff presented only her own inference that her supervisor's actions were based on her protected characteristic). Porto has cited no evidence from which a reasonable fact-finder could conclude that the actions about which she complains occurred because of her disability, or that even if so, they were sufficiently severe or pervasive to affect a term, condition, or privilege of her employment. Therefore, Chevron is entitled to summary judgment on Porto's hostile environment claim because Porto has failed to establish a prima facie case of disability related hostile work environment.

3.   Chevron is Entitled to Summary Judgment on Porto's Claim for Failure to Reasonably Accommodate Her Disability

In her Original Petition Porto alleges that Chevron "has refused [her] requests for reasonable accommodations. . ."[73] Discrimination under Chapter 21 of the Texas Labor Code includes the failure or refusal "to make a reasonable workplace

---

[73]Plaintiff's Original Petition, Exhibit D to Notice of Removal, Docket Entry No. 1-5, p. 4 ¶ 4.7.

accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability . . . unless the [employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business." Tex. Lab. Code § 21.128(a). To establish a claim under the Texas Labor Code based on an employer's failure to provide a reasonable accommodation Porto must show: (1) she is an individual with a disability; (2) Chevron had notice of her disability; (3) with reasonable accommodations she could perform the essential functions of her position; and (4) that Chevron refused to make such accommodations. Texas Department of Family and Protective Services v. Howard, 429 S.W.3d 782, 789 (Tex. App. — Dallas 2014, pet. denied).

Chevron argues that it is entitled to summary judgment on Porto's failure-to-accommodate claim because Porto was provided all of the accommodations that she requested. Citing Eubank v. Lockhart Independent School District, 229 F. Supp. 3d 552 (W.D. Tex. 2017), Chevron argues that

> Porto testified that during her employment she requested the following accommodations: (1) dual screen monitors, (2) an ergonomic chair, and (3) she be allowed to wear her leg brace at the office and not be assigned as a fire warden. (Exhibit A at 88:10-89:13, 188:14-189:19). Porto confirmed there were no other requests for accommodation that she made during her employment. (Exhibit A at 89:1-21, 90:11-18, 99:5-16, 188:14-189:19). Porto admitted under oath that Chevron provided her with each of the accommodations she requested. (Exhibit A at 90:3-10, 284:2-285:2). Thus, Porto's failure to accommodate claim fails as a matter of law.[74]

---

[74]Chevron's MSJ, Docket Entry No. 19, pp. 26-27.

In <u>Eubank</u> the court granted summary judgment to the defendant employer because the undisputed evidence showed that while there may have been some delay, ultimately, plaintiff received all of her requested accommodations. <u>Id.</u> at 560.

In response, Porto has submitted a declaration in which she contends that since her deposition

> she [has] recalled that she also spoke to Ms. Green around January 2016 about her optic neuritis (a condition resulting from her Multiple Sclerosis) that affects her vision. Porto explained to Ms. Green that the two screens that she had were not sufficient to accommodate her eye sight limitations. Specifically, the screens were not large enough, and her vision became even more impaired after working for an extended period of time. She explained this to Ms. Green and requested two larger screens as an accommodation. Ms. Green said she would see what she could do but nothing was ever done. Porto did not receive that reasonable accommodation.[75]

Citing <u>Hacienda Records</u>, 718 F. App'x at 235, Chevron argues that Porto's declaration must be "disregarded and cannot serve as a basis for denying summary judgment,"[76] because it "flatly contradicts her prior sworn deposition testimony without any explanation."[77]

The Declaration attached to Plaintiff's Response in opposition to Chevron's MSJ is not sufficient to raise a genuine issue of material fact as to whether Chevron failed to provide reasonable

---

[75]Plaintiff's Response, Docket Entry No. 21, pp. 26-27 (citing Porto Declaration, Exhibit 1, Docket Entry No. 21-1, p. 4 ¶ 12).

[76]Chevron's Reply, Docket Entry No. 24, p. 15.

[77]<u>Id.</u>

accommodations for Porto's disability because plaintiff has not offered an explanation for the discrepancy between her deposition testimony and her subsequent contrary declaration. During her deposition Porto testified as follows:

> Q. Did you ever ask for any modifications in your work to Mr. Robichaux or to anyone else at that time because of your MS condition?
>
> A. Yes.
>
> Q. What?
>
> A. I told them I needed dual screens because my vision was compromised and needed a new ergo chair.
>
> Q. Anything else?
>
> A. No, I think that was it at that time.
>
> Q. As of the time you terminated employment, let's say the day before you were informed you were terminated from employment, were there any limitations on your ability to perform your job as an administrative assistant because of your MS condition?
>
> A. No.
>
> Q. Aside from needing a dual screen or an ergo chair as of the day before you [were] terminated was there any needs that you had, changes in your work due to your MS condition?
>
> A. No. I did inform my supervisor that I had a leg brace that I was going to have to wear and I was — we have fire wardens and I had to go tell the fire warden that I was mobility impaired to go down stairs.
>
> Q. Any other occasion where you informed anyone from Chevron that you had limitations caused by your MS that would require changes in your work or the way that you do your work or any of those types of things aside from the needing a dual screen,

Q. needing an ergo chair and the fact that due to your leg brace you may have some mobility issues?

A. I — I don't believe so.

. . .

Q. Did you receive a dual screen?

A. Yes.

Q. Did you receive an ergo chair?

A. Yes.

Q. And did you — were you required to be a fire marshal or anything else that would have been a problem because of your limited mobility?

A. I just informed them.

Q. Is there any other occasion where you asked Chevron to do something different than what they would normally do due to the — your condition, your MS condition, the intermittent and all of that, aside from saying I want a dual screen, I want the ergo chair, and, oh, by the way, because of a leg brace I won't be able to be your fire marshal?

A. Not that I can remember.[78]

Because Porto testified during her deposition that she received all of the accommodations that she requested during her employment, her declaration that the two computer screens she received as an accommodation were not large enough and that she asked for larger screens that she did receive contradicts without explanation her deposition testimony. Accordingly, the court will sustain Chevron's objection and strike ¶ 12 of Porto's Declaration

_____

[78]Porto Deposition, Exhibit A to Chevron's MSJ, Docket Entry No. 19-1, p. 29 (pp. 88:16-89:21, 90:3-18).

(Docket Entry No. 19-1) and not consider Porto's declaration testimony that Chevron failed to provide her a requested accommodation. <u>Hacienda Records</u>, 718 F. App'x at 235 (citing <u>S.W.S. Erectors</u>, 72 F.3d at 496). Because absent the testimony in her Declaration about Chevron's alleged failure to provide her a reasonable accommodation, the undisputed evidence is that Chevron provided Porto all of the accommodations that she requested, Chevron is entitled to summary judgment on Porto's claim that Chevron failed to provide her a reasonable accommodation.

4. <u>Chevron is Entitled to Summary Judgment on Porto's Retaliation Claim</u>

Asserting that Chevron "continually retaliated against" her,[79] Porto alleges in her Original Petition that

> [a]fter filing the original EEOC charge on March 9, 2016, [she] was immediately harassed and [retaliated] against by Chevron management. Chevron confiscated [her] company issued phone, accused her of misusing Company assets, and terminated her position on March 24, 2016. Chevron's actions have severely exacerbated her medical condition.[80]

Under § 21.055, an employer commits an unlawful employment practice if it retaliates against an employee who: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code

---

[79]Plaintiff's Original Petition, Exhibit D to Notice of Removal, Docket Entry No. 1-5, p. 4 ¶ 4.7.

[80]<u>Id.</u> at 5 ¶ 4.9.

§ 21.055. See Navy v. College of the Mainland, 407 S.W.3d 893, 902 (Tex. App. — Houston [14th Dist.] 2013, no pet.).

Chevron argues that it is entitled to summary judgment on Porto's retaliation claim because (1) neither the investigation into her alleged P-Card misuse or the confiscation of her company-issued cell phone are adverse employment actions, (2) there is no causal connection between these actions and the filing of her EEOC Charge because these actions occurred before Porto filed that charge, and (3) Porto has no evidence other than her own subjective belief to rebut Chevron's legitimate, non-retaliatory reasons for her discharge.

(a) Porto Establishes a Prima Facie Case of Retaliation

To establish a prima facie case of retaliation Porto must cite evidence capable of establishing that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Id. at 902. It is undisputed that Porto engaged in protected activity by filing an EEOC complaint against Chevron on March 9, 2016; that Porto experienced an adverse employment action when Chevron discharged her effective March 24, 2016; and that the close temporal proximity between the filing of her EEOC complaint and her discharge is sufficient to establish a prima facie case of retaliation under § 21.055. See Clark County School District v. Breeden, 121 S. Ct. 1508, 1511 (2001).

(b)  Chevron Articulates Legitimate, Non-Retaliatory
Reason for the Challenged Actions

Chevron argues that it is entitled to summary judgment on Porto's claim for retaliation arising from her discharge because Chevron discharged Porto for legitimate, non-discriminatory reasons, i.e., "because of her misuse of her P-Card and SmartBadge, her false statements, and failure to cooperate with the internal investigation."[81]  For the reasons stated in § II.C.1(b), above, the court has already concluded that Chevron has met its burden to produce evidence of a legitimate, nondiscriminatory reason for Porto's discharge.  Accordingly, the ultimate issue is whether Chevron unlawfully discharged Porto in retaliation for having engaged in protected activity, i.e., for having filed a charge of discrimination with the EEOC.

(c)  Porto Fails to Raise a Fact Issue as to Pretext or
Retaliatory Motive

Unlike claims for discrimination subject to § 21.125(a), which require just a "motivating factor" causation standard, retaliation claims under § 21.055 are subject to the traditional "but for" measure.  Navy, 407 S.W.3d at 901 (citing Ptomey v. Texas Tech University, 277 S.W.3d 487, 497 & n.11 (Tex. App. — Amarillo 2009, pet. denied) (relying on Pineda, 360 F.3d at 488–89)).  See also

_____

[81]Chevron's MSJ, Docket Entry No. 19, p. 25 (citing Porto Deposition, Exhibit A, Docket Entry No. 19-1, p. 70 (p. 253:4-8); Beaugh Declaration, Exhibit G, Docket Entry No. 19-18, p. 6 ¶ 9; Record of Discussion with Employee, Exhibit K, Docket Entry No. 19-24).

University of Texas Southwestern Medical Center v. Nassar, 133
S. Ct. 2517, 2533 (2013) (discussing the causation requirement for
a retaliation claim brought under Title VII).  In other words,
Porto must cite evidence capable of proving that she would not have
suffered an adverse employment action "'but for' engaging in the
protected activity."  Navy, 407 S.W.3d at 901 (quoting Medina v.
Ramsey Steel Co., Inc., 238 F.3d 674, 685 (5th Cir. 2001), and Long
v. Eastfield College, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[E]ven
if a plaintiff's protected conduct is a substantial element in a
defendant's decision to terminate an employee, no liability for
unlawful retaliation arises if the employee would have been
terminated even in the absence of the protected conduct.")).  In
order to avoid summary judgment on her retaliation claim Porto must
show a conflict in substantial evidence on the question of whether
the employer would not have taken the challenged adverse employment
action but for the protected activity.  See Hernandez v. Yellow
Transportation, Inc., 670 F.3d 644, 660 (5th Cir. 2012) (Title VII
case).  "Evidence is 'substantial' if it is of such quality and
weight that reasonable and fair-minded men in the exercise of
impartial judgment might reach different conclusions."  Id.
(quoting Long, 88 F.3d at 308).

Chevron argues that it is entitled to summary judgment on
Porto's retaliation claim because Porto cannot present evidence
capable of rebutting its legitimate, non-retaliatory reasons for

terminating her employment, i.e., Porto's violation of work rules.
Citing Porto's Deposition, Chevron argues that Porto admitted

> that she had no evidence to suggest that either Beaugh or
> the investigators did not honestly believe that she had
> misused her P-Card and SmartBadge. (Exhibit A at 145:9-
> 13, 280:8-281:2). Porto further admitted that she had no
> evidence to suggest that the investigation was
> purposefully skewed to find wrongdoing on her part or
> that the investigator reached her final decision in order
> to retaliate against her. (Exhibit A at 245:2-12,
> 246:17-22, 247:12-18).[82]

Asserting that "[w]hen considering a plaintiff's evidence of
pretext, the Court 'is not to engage in second-guessing of an
employer's business decisions,' and [that] a mere subjective belief
is insufficient to raise a fact issue,"[83] Chevron argues that
Porto's retaliation claim must fail because Porto's argument that
she was not guilty of the misconduct for which she was discharged
did not create pretext because she has no evidence that the
discharge was motivated by her protected activity.[84]

Chevron also argues that it is entitled to summary judgment on
Porto's retaliation claim because all of the decisions that led to
Porto's discharge were made prior to Porto's filing of her EEOC
Charge on March 9, 2016. Citing the Declaration of Joyce Beaugh,
Chevron argues that the investigation into Porto's misuse of her
P-Card was initiated on February 22, 2016, when Beaugh submitted a

---

[82]Id. at 35.

[83]Id.

[84]Id.

complaint about Porto's P-Card use to Chevron's ethics and
compliance hotline, which initiated an investigation by Jennifer
Wynn, the Human Resources Business Partner for the DWEP Drillings &
Completions Group, that Beaugh decided to confiscate Porto's phone
on February 24, 2016, after receiving confirmation from Porto's
previous supervisor, Shawn Pace, that he had not approved Porto's
request to purchase the large capacity iPhone that she had
purchased, and that the decision to discharge Porto was made on
March 3, 2016, when Beaugh met with legal counsel and Human
Resources.[85]  Beaugh's declaration testimony is supported by copies
of the ethics and compliance report submitted on February 22,
2016,[86] and a February 24, 2016, email from Shawn Pace stating that
he did not authorize Porto to purchase a 32 gig phone.[87]

     In  response  to  Chevron's  proffered  legitimate,
nondiscriminatory reasons for her discharge, Porto argues that she
has cited competent summary judgment evidence showing that Chevron's
stated reasons for her discharge are false, and that retaliatory
intent is shown by (1) the timing of her discharge — within weeks of
filing  her  charge  of  discrimination  with  the  EEOC  —  and
(2) Chevron's failure to follow its common practice of meeting with

---

[85]Id. at 33 (citing Beaugh Declaration, Exhibits G, Docket
Entry No. 19-18, pp. 5-6 ¶¶ 7-9).

[86]Exhibit G-1 to Chevron's MSJ, Docket Entry No. 19-19.

[87]Exhibit G-2 to Chevron's MSJ, Docket Entry No. 19-20.

her to have her sign her discharge documents.[88]  For the reasons stated in § II.C.1(c), above, the court has already concluded that Porto has failed to cite evidence capable of establishing that Chevron's stated reasons for discharging her were false.

Close timing between an employee's protected activity and an adverse action against her is sufficient to provide the causal connection required to make out a prima facie case of retaliation, but is not sufficient to establish retaliatory motive once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing.  In such cases plaintiffs must offer some evidence from which the jury may infer that retaliation was the real motive.  Porto has offered no such evidence and even assuming that she had, the court concludes that evidence is overcome by the undisputed evidence that Porto's discharge was the direct result of the investigation into her P-Card misuse, which was initiated before she filed her EEOC Charge.  See Breeden, 121 S. Ct. at 1511 ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

As a matter of law, temporal proximity alone is insufficient to prove a causal link connecting the protected activity and the

_____

[88]Plaintiff's Response, Docket Entry No. 21, pp. 24-26.

adverse employment action.  <u>Hernandez</u>, 670 F.3d at 660 (citing

<u>Strong v. University Healthcare System, L.L.C.</u>, 482 F.3d 802, 808

(5th Cir. 2007)).  Temporal proximity may only create a genuine

dispute of material fact on the issue of but-for causation if the

employee also introduces other probative evidence of pretext.  <u>Id.</u>

<u>See also</u> <u>Crutcher</u>, 410 S.W.3d at 496 ("Temporal proximity may be

evidence of a causal connection only when a person with input into

the employment decision was aware of the protected activity.").

The only other evidence of pretext to which Porto points is her own

assertion that Chevron failed to follow its standard practice and

procedure when it mailed her discharge documentation to her instead

of having her sign the documents in person.[89]  Porto fails, however,

to cite any record evidence in support of this assertion.  Even if

Porto had cited such evidence, it could not have raised a genuine

issue of material fact for trial because failure to follow a policy

of having an employee sign discharge documents in person is not

probative of retaliatory intent since the purported deviation from

Chevron's policy did not concern the challenged decision to

discharge Porto, but only the manner in which that decision was

communicated to Porto.  <u>See</u> <u>Smith v. Xerox Corp.</u>, 371 F. App'x 514,

520 (5th Cir. 2010) (noting under defendant's usual policies

plaintiff would have been reassigned, not discharged).  Because

Porto's only evidence of causal connection is close timing between

_____

[89]<u>Id.</u> at 25.

her EEOC Charge and her termination, and because temporal proximity alone is not sufficient to create a dispute of material fact for trial, the court concludes that Chevron is entitled to summary judgment on Porto's claim for retaliatory termination.

### III.   Chevron's Objections and Motion to Strike

Chevron objects to and moves to strike Porto's Declaration submitted in support of her Response to Chevron's MSJ (Docket Entry No. 23) arguing that the declaration contradicts Porto's sworn deposition testimony, the declaration contains improper legal conclusions or denials for which Porto lacks personal knowledge, the declaration contains conclusory and unsupported assertions or subjective or self-serving interpretations, and the declaration contains inadmissible hearsay.[90]   For the reasons stated in §§ II.C.1(c) and II.C.3, above, the court has already concluded that Chevron's Objections and Motion to Strike ¶¶ 7-9 and 12 of Porto's Declaration should be granted because these paragraphs contradict without explanation Porto's sworn deposition testimony. For the reasons stated in § II, above, the court has been able to resolve Chevron's MSJ without reference to the remaining paragraphs of Porto's Declaration.   Thus Chevron's Objections and Motion to Strike will be granted as to ¶¶ 7-9 and 12 of Porto's Declaration, and denied as moot as to all other paragraphs.

---

[90]Chevron's Objections and Motion to Strike, Docket Entry No. 23, p. 2.

-53-

## IV. Conclusions and Order

For the reasons explained above in § II, Defendant Chevron U.S.A., Inc.'s Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED**.

For the reasons explained above in § III, Chevron's objections to Porto's Declaration are granted with respect to ¶¶ 7-9 and 12, and denied as moot with respect to all other paragraphs. Accordingly, Defendant Chevron U.S.A., Inc.'s Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike (Docket Entry No. 23) is **GRANTED IN PART** and **DENIED IN PART**.

**SIGNED** at Houston, Texas, on this the 24th day of July, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE